Douglas MORGAN, et al., Plaintiffs–Appellants,

v.

The CITY OF DeSOTO, TEXAS, et al., Defendants–Appellees.

No. 89–1727.

United States Court of Appeals, Fifth Circuit.

May 10, 1990.

Kent S. Hofmeister, Jerry C. Gilmore, D. Bradley Dickinson, Vial, Hamilton, Koch & Knox, Dallas, Tex., for DeSoto, Tex., Hood, O'Briant, Agee, Krude, Henrise, Broadnax, Musser, Zuhlman, Ransom, Norton & Dyer.

David B. Dyer, Louis J. Weber, Jr., Jenkins & Gilchrist, Dallas, Tex., for Farmer & Wedding.

Garland F. Henley, Law Offices of Garland F. Henley, Dallas, Tex., for Rowlett.

Judith H. Winston, R. Brent Cooper, Cowles & Thompson, Dallas, Tex., for Henry S. Miller Co.

Before GOLDBERG, REAVLEY and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

There was trouble in the City of DeSoto in the years 1983 to 1985. Young people "cruised" the main street at night and congregated in large numbers in adjacent parking lots. Shopping centers were hardest hit. In addition to the traffic jams and some vandalism, the biggest trouble was the litter which had to be cleaned from the lots the following mornings. Evictions and warnings by the police, as well as distribution of leaflets and speeches about the trespass law, had little success. Trouble in DeSoto did not end. And as the complaints of the citizens and shopping center managers continued, city officials resolved to act. And act they did.

At 10 p.m. on the night of May 3, 1985, the police force augmented by constables and sheriff's deputies from Dallas County descended on the parking lots and arrested every person who happened to tread that ground that evening. Juveniles were detained in handcuffs only until they could be taken to the local police station, but the culprits who were 17 or older received the full treatment of the criminal justice system: jail and prosecution for criminal trespass. No doubt some of the arrestees had received prior warnings and deserved little sympathy for what happened to them that evening. The same cannot be said for

Douglas R. Larson, Mesquite, Tex., for Douglas Morgan, et al.

everyone. Take, for example, the girls on the Grand Prairie softball team.

Four high school girls on the Grand Prairie team had come to DeSoto to play in a softball tournament that evening. After the game, wearing their uniforms, they were on their way home when the driver made the fatal mistake of pulling off the street onto the edge of a parking lot to investigate signals from boys in a following pickup truck. Their meeting lasted two minutes before all were arrested, handcuffed with hands behind their backs, and put in a circle on the pavement until a police paddy wagon transported them to the city police station. These girls had no previous experience of this nature, no knowledge of any wrong of which they were guilty, and they cooperated at all times with the police and authorities. Nevertheless, they were marched before a municipal judge who issued a capias for the benefit of the Dallas County Sheriff. Deputies then transported the girls to the Dallas County jail, where they were processed again and placed in a jail tank with prostitutes and a screaming prisoner. A telephone call to their parents was finally allowed between 1:00 and 2:30 in the morning. The girls spent the night in the jail. Some of the boys did not obtain release until late the next afternoon.

It did not stop there. The charges were taken up by the Criminal District Attorney of Dallas County. To prove how resolute that office is against the forces of crime, these girls were indicted by the Dallas County grand jury and prosecuted vigorously in criminal court. When matters finally reached the hands of sensible people, the jurors, the girls were acquitted. After three trials ended in acquittals, the remaining indictments were dismissed.

The crime which these girls were supposed to have committed takes us to section 30.05 of the Texas Penal Code, which at the time of their arrest provided as follows:

### § 30.05 Criminal Trespass

(a) A person commits an offense if he enters or remains on property or in a building of another without effective consent and he:

(1) had notice that the entry was forbidden; or

(2) received notice to depart but failed to do so.

(b) For purposes of this section:

(1) "entry" means the intrusion of the entire body; and

(2) "notice" means:

(A) oral or written communication by the owner or someone with apparent authority to act for the owner;

(B) fencing or other enclosure obviously designed to exclude intruders or to contain livestock; or

(C) a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of the intruders, indicating that entry is forbidden.

Tex.Penal Code Ann. § 30.05 (Vernon 1989) (amended 1989).

The plaintiffs were arrested either at the Pleasant Run Village Shopping Center or the Hampton Square Shopping Center. Signs 12 to 18 inches square were affixed on light standards at a height of 10 or 20 feet. Most of them were facing in toward the parking areas and not the outer boundaries. The eight signs posted at Hampton Square Shopping Center read as follows:

No trespassing, these premises are for Hampton Square Shopping Center patrons only. Loitering and littering are prohibited by law and will be prosecuted under § 30.05 of the Texas Penal Code.

The five signs posted at Pleasant Run Village Shopping Center read as follows:

No Trespassing, these premises are for Pleasant Run Shopping Center customers and Tenants only. Entry to the lot by all other persons is prohibited. Violators will be prosecuted under 30.05 of the Texas Penal Code.

The visibility of these signs at night was controverted. The DeSoto police officers said that they were visible and readable. Plaintiffs said that they could not read the signs even when the location was pointed out to them.

In this sizeable summary judgment record, with five volumes of court papers, six depositions, and four volumes of transcripts of three trials in the Dallas County criminal court, and in the briefs and arguments of counsel before this court, there is no suggestion from any defendant or defendant's lawyer that there was the least impropriety in the entire May 3, 1985 operation, or that the consequences were at all regrettable. One affiant states that the mayor of DeSoto opined that "if some kids had to go to jail, it was too bad, but maybe it would teach others not to go on the parking lots in DeSoto." The defendants presented an affidavit of Dr. Merlyn D. Moore, as an expert "in the analysis of police operations." Dr. Moore concludes his affidavit with this statement: "In my opinion, there was a valid justification for the prior planning, the arrest and the following detention."

This court is unable to understand that opinion or to find any justification for the extent of this operation. Regardless of the visibility of the signs, regardless of whether a class B misdemeanor (criminal trespass) was committed, regardless of whether the officers had a probable cause to arrest, and regardless of how bad a litter problem the shopping centers were having, we can find no explanation for taking every high school student found on the parking lot under any circumstances and arresting them, handcuffing them, and keeping them in jail for the night as if they were threats to society. Whatever the legal points and the liability, how can any party deny that the criminal justice system operated here as an instrument of oppression?

### This Case

Having said that,[1] we come to the case before us. Seven of the young people arrested brought this civil rights action under 42 U.S.C. § 1983, seeking damages for the unconstitutional deprivation of their liberty because of an illegal arrest. They sued the arresting officers, the City of DeSoto, and the managers of the two shopping centers. Summary judgment was rendered for all defendants. We reverse the judgment for the officers and the City.

### 1. Arresting Officers

The plaintiffs could establish a cause of action by proving that the officers had no probable cause to arrest them. However, even if probable cause did not in fact exist, the law enforcement officials were entitled to qualified immunity if a reasonable officer could have believed the arrest to have been lawful, in light of clearly established law and the information the arresting officers possessed. *Anderson v. Creighton*, 483 U.S. 635, 643, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). An arresting officer is not liable unless a reasonable officer would understand that what he is doing violates a right of the citizen being arrested. The unlawfulness must be apparent. 107 S.Ct. at 3039. The arresting officers here were therefore entitled to summary judgment if the summary judgment proof left no issue but that a reasonable officer could have thought that the plaintiffs had committed the crime of criminal trespass. That, in turn, depended upon whether the signs posted on the property indicated that entry was forbidden and were reasonably likely to come to the attention of intruders. It was not necessary that the sign be seen by the arrestee or that it be visible to them from any particular place. It was only required that there be a reasonable likelihood that a sign would "come to [their] attention." Texas Penal Code Ann. § 30.05(b)(2)(C) (Vernon 1989); *Bain v. State*, 677 S.W.2d 51, 58 (Tex.Crim. App.1984) *overruled on other grounds*, *Black v. State*, 739 S.W.2d 240 (Tex.Crim. App.1987).

Whether a reasonable officer could have concluded that there was a reasonable likelihood that these signs, or one of them,

---

**1.** Our introduction is not entirely irrelevant to the lawsuit at hand. The DeSoto operation, and its scope, were apparently planned by top city officials. The planning and the follow up tend to prove that arrests of innocent high school girls, with or without probable cause, may have been considered an acceptable risk of the plan. Or that the planners were indifferent to that likely consequence.

would come to the attention of an intruder, is a question of fact. We are unable to resolve this question on the summary judgment record before us. Aside from the question of whether, under all of these circumstances, the signs would give reasonable notice to anyone driving upon or across the shopping center parking lot that they were excluded from doing so, the visibility of the signs and their messages cannot be determined. We find references to photographs and drawings, but none of them was included in the record. Several of the plaintiffs testified at the criminal trials that they were unaware of the signs and could not read them after they were directed by the officers where to look. From the statements in this record we conclude that a fact finder could find that a reasonable peace officer would necessarily believe that no probable cause existed to arrest someone on these lots without a warning and order to leave. The fact finder could accept plaintiffs' version of the facts, as follows: The lots were used freely by the public during the day. One of them was also used at night to obtain access to a drive-through food outlet. Of the many entrances to the parking areas, a sign was posted at only one entrance. The other signs were not likely to be seen unless one went into the parking area and looked for them. At night they were difficult to read unless one were at the right place. Citizens could easily drive upon the lots without the slightest reason to believe they might be guilty of wrongdoing. And even if they happened to read one of the signs, they would not likely understand that a mere entry was a forbidden act, for which they could be charged with crime.

It follows that the qualified immunity of the arresting officers was not established, and neither was probable cause for the arrests. Summary judgment was improper.

### 2. Officers Byers and Brodnax

What has been said about the other officers does not apply to W.M. Brodnax and L.R. Byers, who were not at these two parking lots on this occasion and had no role in the arrests of any of these plaintiffs. No issue having been raised as to their liability, the summary judgment in their favor stands.

### 3. City of DeSoto

This is not a case where the complaining party predicates her case upon a municipal policy or custom responsible for the injury. But there is an issue here of whether the City Council of DeSoto or its Police Chief or Director of Public Safety, acting as the city policymaker, were responsible for illegal arrests, if they were illegal. If the council or its policymaker directed arrests whether or not the parking lots were legally posted, and irrespective of notice to intruders, or in reckless disregard thereof, the City would be liable for a resulting constitutional deprivation. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 923–24, 99 L.Ed.2d 107 (1988) (O'Connor, J., plurality); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986) (Brennan, J., plurality); *Monell v. Department of Social Servs.*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). The statements of the city officials, the minutes of the City Council meeting held on May 6, 1985 and the testimony of the Director of Public Safety and the Police Chief raise substantial questions about that potential liability. We conclude that the summary judgment was premature.

### 4. The Shopping Center Managers

The Henry S. Miller Company and its agents David Farmer and Mark Wedding, as managers of the Pleasant Run Village Shopping Center, and C.W. Rowlett as manager of Hampton Roads Shopping Center, were sued on the theory that they were parties to a conspiracy in the illegal arrests of the plaintiffs. In order to prove their liability, plaintiffs would have to establish that these defendants were parties to a preconceived plan to arrest the persons on the parking lot because of the plan and without any independent investigation by the officers. *See Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1079 (5th

Cir.1985). But there is nothing in this record that suggests that these property managers had any role in, or even notice of, the official decision to arrest the plaintiffs. These defendants requested the assistance of the officials to protect their property, and they supported the charges once made by the proper officials. Summary judgment in their favor was proper.

### Conclusion

The judgment of the district court is affirmed dismissing the claims against W.M. Brodnax, L.R. Byers, Henry S. Miller Company, David Farmer, Mark Wedding and C.W. Rowlett; as to the arresting officers defendants Kenneth Hood, Stanley Joe Briant, Norman Agee, Dennis Kruse, J.T. Henrise, Earl D. Musser, J. Zihlman, W. Ransom and Boyd Norton, and the City of DeSoto, the judgment is reversed. The remaining cause of action is remanded to the district court.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.