**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 98-50302

---

GAIL ATWATER, Individually; MICHAEL HAAS, Dr, As next friend
of Anya Savannah Haas and Mackinley Xavier Haas,

Plaintiffs-Appellants,

VERSUS

CITY OF LAGO VISTA, BART TUREK, and FRANK MILLER, Chief of
Police, Lago Vista,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Texas

---

January 29, 1999

Before REYNALDO G. GARZA, STEWART, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellants Gail Atwater and Michael Haas, as next friend of
Anya Savannah Haas and Mackinley Xavier Haas, appeal the decision
of the district court granting defendants, City of Lago Vista, Bart
Turek, and Frank Miller, summary judgment. Finding error, we
reverse in part and remand.

BACKGROUND

Gail Atwater and her family are long-term residents of Lago Vista, Texas, a suburb of Austin. She is a full-time mother and her husband is an emergency room physician at a local hospital. On the pleasant spring afternoon of March 26, 1997, as Gail Atwater was driving her children home after their soccer practice at 15 miles per hour through her residential neighborhood, she violated Section 545.413 of the Texas Transportation Code. Neither Gail Atwater, her four-year-old son nor her six-year-old daughter were wearing their seat belts. Detecting this breach of the peace and dignity of the state, Lago Vista police officer, Bart Turek, set about to protect the community from the perpetration of such a crime. In doing so, he brought to bear the full panoply of means available to accomplish his goal-- verbal abuse, handcuffs, placing Gail Atwater under custodial arrest, and hauling her to the local police station. It was not a proud moment for the City of Lago Vista.

When Officer Turek pulled over Atwater's pickup, she and her children remained in the vehicle. Officer Turek approached the driver's side window and aggressively jabbed his finger toward her face. Turek screamed either that they had met before or had this conversation before. Turek's conduct frightened her children, so Atwater calmly and in a normal tone requested that Turek lower his voice. According to Atwater, the request that Turek lower his voice further triggered his wrath. Turek responded immediately by telling Atwater that she was going to

jail.  Atwater remained calm.  Atwater was not acting suspiciously, she did not pose any threat to Turek, and she was not engaged in any illegal conduct other than failing to wear a seat belt when Turek told her she was going to jail.

Turek continued to speak to Atwater in a verbally abusive manner, accusing her of not caring for her children.  Atwater's children and bystanders including friends and other Lago Vista residents who drove or walked by witnessed Turek's tirade.  Turek stated that he recently stopped Atwater for not having her children in seat belts, but such was not the case.  Turek had in fact stopped her several months before for allowing her son to ride on the front seat arm rest, but the seat belt was securely fastened.  No citation was issued.

After telling Atwater that she would be taken to jail, Turek demanded her driver's license and proof of insurance.  When Atwater informed Turek that her license and insurance card were in her purse that had been stolen a couple of days before, Turek ridiculed her and implied she was a liar, even though, assuming he followed standard procedures during the previous stop, he knew she had a valid driver's license and was an insured driver.  Atwater eventually provided her driver's license number and address from her check book.  Atwater then asked Turek to allow her to take her children to a friend's home just two houses down before taking her to jail, but he refused her request.  Turek stated that her children could accompany her to the police

3

station.  Fortunately, a friend of Atwater's who came to the scene took the children into her care.

Although under Texas law Turek could have issued Atwater a traffic citation if she signed a promise to appear,[1] he instead chose to handcuff Atwater with her hands behind her back, load her into his squad car, and take her to the police station.  Once at the police station, Atwater was required to remove her shoes and glasses, empty her pockets and have her picture taken.  She was then placed in a jail cell for approximately one hour before being taken before a magistrate.

Atwater pleaded no contest to not wearing a seat belt and allowing her children to not wear seat belts.  Charges of driving without a license or proof of insurance were dismissed.  This incident caused Atwater and her children extreme emotional distress and anxiety.  Her youngest child has required counseling, and Atwater has been prescribed medication for nightmares, insomnia, and depression resulting from this incident.

Frank Miller, the chief of police for Lago Vista, was the ultimate authority in the police department in the areas of management of department personnel.  Lago Vista's policy for enforcement of traffic violations allows for the use of custodial arrests to promote its goals of increased traffic ordinance

---

[1]*See* Tex. Transp. Code Ann. § 543.005.

4

compliance.  The policy specifically leaves to the officer's judgment whether to take a motorist into custody for violations of a traffic ordinance, and according to Appellants, encourages the very conduct engaged in by Officer Turek.

Atwater and her husband, as next friend for her children, brought suit against the City of Lago Vista, Police Chief Miller, and Officer Turek under 42 U.S.C. § 1983 and § 1985 alleging *inter alia* violations of Atwater's Fourth Amendment rights to be free from unreasonable seizures and excessive force and punishment as well as her right to due process under the Fifth and Fourteenth Amendments.  Atwater also brought state law claims for false imprisonment and intentional infliction of emotional distress.  A claim for intentional infliction of emotional distress was brought on behalf of her children.

The defendants filed a Rule 12(b)(6) motion to dismiss, or alternatively, a motion for summary judgment based in part on qualified immunity.  The district court granted summary judgment holding that the plaintiffs had not identified a constitutional right that had been violated and that the individual defendants had not acted in an objectively unreasonable manner.  With respect to the Fourth Amendment unreasonable seizure claim, the district court found that the plaintiffs failed to state a claim. With respect to the claims against the municipality, the district court found that although the plaintiffs proved "policy or

custom" they failed to offer evidence of an underlying unconstitutional activity.  The district court also granted summary judgment on the state law claims.  Atwater and her children timely appeal.


ANALYSIS

We review the grant of summary judgment *de novo* applying the same standard as the district court.  *See Ellison v. Connor*, 153 F.3d 247, 251 (5th Cir. 1998).  For purposes of summary judgment, the court considers the evidence of the nonmovant plaintiffs as true and draws all inferences in the nonmovants' favor.  *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986).


I.   <u>FAILURE TO STATE A CLAIM</u>

With respect to Appellants' Fourth Amendment unreasonable seizure claim, the district court concluded that the Appellants failed to state a claim because they did "not allege with any particularity what conduct violated what provision of the Constitution."  Order of February 13, 1998, p. 5.  This conclusion of the learned district judge misses the mark. Appellants' First Amended Petition alleged facts to support an unreasonable seizure claim under the Fourth Amendment. Appellants alleged that Officer Bart Turek stopped Atwater for

6

not wearing a seat belt and not having her children properly seatbelted in the vehicle.  Appellants further alleged that Officer Turek began yelling at her, telling her she was going to jail.  According to Appellants, Officer Turek then continued to abuse her verbally, handcuffed her, and took her to jail, for a mere seat belt violation.  Appellants alleged that this constituted an unreasonable seizure under the Fourth Amendment. *See* First Amended Petition, p.11.  We find that facts were alleged with sufficient particularity to state a claim under the Fourth Amendment.

## II.  QUALIFIED IMMUNITY AND OFFICER TUREK[2]

Although the district court dismissed Appellants' Fourth Amendment claim for failure to state a claim, the Appellees presented an argument on summary judgment that the individual defendants were also entitled to qualified immunity.  *See* Rule 12(b)(6) Motion for Dismissal, Or, In the Alternative, Rule 56 Motion and Brief for Summary Judgment, p. 19.  Although it appears that this section of the summary judgment brief focuses only on the qualified immunity defense of Chief Miller and never mentions Officer Turek by name, portions of the brief do allude

---

[2]We discuss only the issue of the Fourth Amendment unreasonable seizure claim because it is the claim which the court considers to have merit.  The judgment of the district court on the other claims asserted by Appellants will be affirmed.

to the "individual defendants," which ostensibly includes Officer Turek. We shall give Appellees the benefit of the doubt that they were asserting qualified immunity on behalf of both Chief Miller and Officer Turek.

Determining whether an official is entitled to qualified immunity is a two-step process requiring the court to determine (1) whether the plaintiff has alleged a violation of a clearly established constitutional right and (2) whether the official's conduct was objectively reasonable in light of clearly established law as it existed at the time of the conduct in question. *See Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998). Although Atwater concedes that Turek had probable cause to stop her for failure to wear a seat belt, Atwater challenges the reasonableness under the Fourth Amendment of her arrest for violation of the Texas seat belt law.

A.    Clearly Established Law

The way one states the legal principle which must be clearly established before liability can attach is oftentimes outcome-determinative. In that vein, the defendants point out that no case exists which calls Officer Turek's actions into question; thus no clearly established law exists. Indeed we have found no case where a court was asked to consider an officer's action of arresting, handcuffing, booking, and holding a first-time seat

8

belt violator in jail.  But that does not conclude the inquiry.

The paucity of similar factual scenarios that have found their

way into published legal opinions may be attributable to law

officers acting in a more responsible and professional manner

than Bart Turek acted on this occasion.  Or in those instances

where similar abuses took place, perhaps the victims either were

without the resources to call the officer's hand or chose to

avoid further involvement with a justice system so lacking in

common sense and reasonableness.

The Fourth Amendment provides:

> The right of the people to be secure in their persons,
> houses, papers, and effects, against unreasonable
> searches and seizures, shall not be violated, and no
> Warrants shall issue, but upon probable cause,
> supported by Oath or affirmation, and particularly
> describing the place to be searched, and the persons or
> things to be seized.

It has long been clearly established that there is a

constitutional right to be free from unreasonable seizures.  *See,*

*e.g., Brower v. County of Inyo*, 489 U.S. 593 (1989); *Steagald v.*

*United States*, 451 U.S. 204 (1981); *Terry v. Ohio*, 392 U.S. 1

(1968).   Further, it is clearly established that even where

there is probable cause to believe an offense has been committed,

any seizure which is conducted in an extraordinary manner or

which constitutes an extreme practice must meet the

9

reasonableness requirement of the Fourth Amendment.[3]  *See, e.g.,*
*Tennessee v. Garner*, 471 U.S. 1 (1985)(finding that when an
arrest requires the use of deadly force, probable cause is not
sufficient and the means for the arrest must be reasonable);
*Welsh v. Wisconsin*, 466 U.S. 740 (1984) (holding that warrantless
arrest of a suspect in his home for a traffic offense was
unreasonable);  *New York v. Payton*, 445 U.S. 573, 585 (1980)
("the warrantless arrest of a person is a species of seizure
required by the [Fourth] Amendment to be reasonable"); *Jones v.*
*United States*, 357 U.S. 493 (1958) (probable cause insufficient
for warrantless arrest in farmhouse at night).

   B.   Objective Reasonableness

The Texas seat belt law is one of a number of paternalistic
statutes enacted by the Texas Legislature, the violation of which
usually exposes the offender to the imposition of a fine.  *See,*
*e.g.,* Tex. Trans. Code Ann. § 545.413 (requiring the driver,
front-seat passenger, and children from ages four to fifteen to
wear a seat belt); Tex. Trans. Code Ann. § 545.414 (prohibiting a
child under twelve years of age to ride in the open-bed of a
pickup truck); Tex. Trans. Code Ann. § 545.419 (prohibiting a
person from occupying a house trailer while it is being moved);

---

   [3]*See Whren v. United States*, 517 U.S. 806, 818 (1996), and
discussion *infra*.

Tex. Parks & Wildlife Code Ann. § 31.066 (requiring life preservers on motorboats and requiring passengers under 13 years of age to wear life preservers).  We refer to these laws as paternalistic because they are designed to protect a specific individual from his own conduct, conduct which poses no threat to the pubic at large.  We contrast these paternalistic statutes with most traffic laws, the violation of which can have an immediate impact on other users of streets and roadways.  *See, e.g.,* Tex. Penal Code Ann. § 49.04 (prohibiting the operation of a motor vehicle while intoxicated); Tex. Trans. Code Ann. § 545.351-352 (requiring motorists to drive within speed limits); Tex. Trans. Code Ann. § 545.401 (prohibiting reckless driving); Tex. Trans. Code Ann. § 545.104 (requiring the use of turn signals).  In order to determine the objective reasonableness of Officer Turek's actions we must understand the nature of the offense involved and who the law is designed to protect because that helps us weigh the governmental interest in arresting a violator versus the individual's privacy interest under the Fourth Amendment.

Atwater's operation of a motor vehicle without wearing a seat belt and without her children wearing a seat belt in the front seat was a violation of § 545.413 of the Texas Transportation Code.  Violation of the Texas Seat Belt Law is a "misdemeanor punishable by a fine of not less than $25 or more

than $50." Tex. Trans. Code Ann. § 545.413(d). No jail term is provided in the statute. Under the Texas Code an officer has the discretion to allow a motorist to secure release upon arrest by making a written promise to appear in court. *See* Tex. Trans. Code Ann. § 543.005. Once a motorist provides a written promise to appear by signing the citation, an officer is required to promptly release the motorist. *See id*. Section 543.001 of the Texas Transportation Code provides that: "Any peace officer **may** arrest without warrant a person found committing a violation of this subtitle." However, any decision to arrest and the circumstances surrounding the arrest must be considered within the confines of the Fourth Amendment.

Although the statute provides that persons "may" be arrested for seat belt violations, it does not provide that in all circumstances an arrest is appropriate. Certainly a statute which authorizes arrest for a mere seat belt violation in every instance would be subject to a Fourth Amendment challenge.

In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court held that the use of deadly force to apprehend a fleeing suspect who did not appear to be armed or otherwise dangerous violated the suspect's constitutional rights, notwithstanding the existence of probable cause to arrest. In reaching this conclusion, the Court explained that "[t]o determine the constitutionality of a seizure `we must balance the nature and

12

quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* at 8 (citations omitted). That "reasonableness depends on not only when a seizure is made, but also how it is carried out." *Id.* The Supreme Court's Fourth Amendment jurisprudence makes clear that in determining reasonableness, we must ask "whether the totality of the circumstances justified a particular sort of search or seizure." *Id.* 8-9.

Appellees argue that Officer Turek's actions were justified because he had probable cause[4] to believe a seat belt violation had occurred, and the Texas statute authorized the arrest. It is not that simple. Officer Turek cannot hide behind the Texas seat belt law to legitimate his actions. Most recently in *Knowles v. Iowa*, 119 S. Ct. 484 (1998), the Supreme Court examined the question of whether a search incident to traffic citation authorized by Iowa law nonetheless violated the Fourth Amendment. Implicit in the Court's decision that the actions of the officer violated the Fourth Amendment is the realization that the existence of the Iowa statute did not obviate the need for an independent Fourth Amendment analysis. "Where a statute

---

[4]Probable cause occurs when the facts and circumstances within an officer's knowledge are sufficient to warrant a prudent man in believing that a person committed or was committing an offense. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964).

13

authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified  immunity." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). Defendants' reading of the Texas Seat Belt Law would be patently violative of the Fourth Amendment because it would read the reasonableness requirement out of the Amendment.

However, it is a cardinal principle that courts will construe a statute to avoid a constitutional problem. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568 (1988); *Crowell v. Benson*, 285 U.S. 22 (1932).  In doing so, we do not interpret the Texas statute to authorize arrest in every instance.  To the contrary, the statute necessarily requires the exercise of discretion in the decision to arrest or not--reasonableness being the key in exercising that discretion.

At common law the general rule was:

In cases of misdemeanor, a peace officer like a private person has at common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence.

*Carroll v. United States*, 267 U.S. 132, 157 (1925)(quoting Halsbury's Laws of England, vol. 9, part. III, 612).  Early common law prohibited arrest for very minor offenses.  *See* Barbara C. Salken, The General Warrant of the Twentieth Century?

14

A Fourth Amendment Solution to Unchecked Discretion to Arrest for Traffic Offenses, 62 TEMP. L. REV. 221, 258-59 (1989) (citing W. Paley, THE LAW AND PRACTICE OF SUMMARY CONVICTIONS 19 (London 1814)).

Although the Fourth Amendment and common law do not always coincide, the Supreme Court has recognized the logic of distinguishing between minor and serious offenses in evaluating the reasonableness of a seizure under the Fourth Amendment. Indeed, this is not a novel idea. *See Gustafson v. Florida*, 414 U.S. 260, 266-67 ((1973)(Stewart, J., concurring)("It seems to me that a persuasive claim might have been made in this case that the custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments).  In *Welsh v. Wisconsin*, 466 U.S. 740 (1984), police officers arrived at the scene of a traffic accident and obtained information indicating that the driver of the automobile involved was guilty of a first offense of driving while intoxicated.  The driver left the scene of the accident, and the officers followed the suspect to his home where they arrested him without a warrant.  Absent exigent circumstances, the warrantless invasion of the home was a clear violation of *Payton v. New York*, 445 U.S. 573 (1980).  In holding that the warrantless arrest for a traffic offense was unconstitutional the Court stated:

> When the government's interest is only to arrest for a
> minor offense,  . . . the government usually should be

15

allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Welsh*, 466 U.S. at 750. In this case, had Officer Turek gone to a magistrate, undoubtedly no arrest warrant would have been issued.[5]

Even Justice White, in dissenting in *Welsh* stated:

The gravity of the underlying offense is, I concede, a factor to be considered in determining whether the delay that attends the warrant-issuance process will endanger officers or other persons. The seriousness of the offense with which a suspect may be charged also bears on the likelihood that he will flee and escape apprehension if not arrested immediately.

466 U.S. at 759. In this case there is not the slightest hint of exigent circumstances.

Appellees urge this court to recognize the significant body of authority which appears to indicate that all seizures are reasonable under the Fourth Amendment if based upon probable cause. *See, e.g., United States v. Watson*, 423 U.S. 411 (1976) (where the arrest for a felony occurring in a public place during the daytime required only probable cause to be constitutional). *But see* 3 Wayne R. LaFave, SEARCH AND SEIZURE § 5.1(b) (3d ed. 1996) (criticizing *Watson* as remarkable for its lack of

---

[5]   Justice Jackson writing in concurrence in *McDonald v. United States*, 335 U.S. 451, 459-60 (1948), explained his view about warrantless home arrests for minor offenses:  "When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequences if he postponed action to get a warrant."

16

analysis); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964) (noting that the constitutional validity of an arrest turns upon whether the officer had probable cause to make the arrest). Once again, this is an oversimplification of the status of our Fourth Amendment jurisprudence. Most recently, in *Whren v. United States*, 517 U.S. 806, 817-18 (1996), the Supreme Court explained that although the general rule is that the "reasonableness" of a search or seizure is not in doubt where the search or seizure is based upon probable cause, a balancing of all relevant factors is necessary under the Fourth Amendment when the search or seizure is conducted in an "extraordinary manner" or constitutes an "extreme practice." *Id.* The Court cited *Tennessee v. Garner* and *Welsh v. Wisconsin*, among others, as examples of seizures conducted in an extraordinary manner, i.e., "unusually harmful to an individual's privacy or even physical interests." *Whren*, 517 U.S. at 818.

In *Whren*, the Court faced the issue of whether a temporary detention of a motorist based upon probable cause that he violated a traffic law was unconstitutional under the Fourth Amendment. The Court concluded that a traffic stop by an out-of-uniform officer did not rise to the level of an extreme practice to warrant the reasonableness analysis employed in cases where a seizure was conducted in an extraordinary manner. *See id.* This is in keeping with the Supreme Court's observation that traffic

stops are generally brief in nature and not as invasive as other forms of seizure. *See, e.g., Berkemer v. McCarty*, 468 U.S. 420, 439 n.29 (1984).

In light of the Supreme Court precedent clearly established prior to the incident in question, particularly the Supreme Court's explanation in *Whren*, we easily conclude that an arrest for a first-time seat belt offense is indeed an extreme practice and a seizure conducted in an extraordinary manner which requires a balancing analysis to determine the reasonableness of the police activity. In conducting the analysis, we observe that the only possible governmental interest in arresting Atwater for the seat belt offense was enforcement of the seat belt law. Atwater did not pose a threat to the officer's safety; she was not a flight risk; and upon release she would not have posed a danger to society. Atwater was not a repeat offender. The seat belt law could have been enforced equally well through the issuance of a citation. With respect to the method of arrest, there was no good reason for Atwater to be handcuffed behind her back. Upon conducting a balancing test of all relevant factors, we find no factors existing in this case that are appropriate for placement on the side of the scales that would tilt them in favor of seizure. The seizure was objectively unreasonable.

Appellees' citation of *United States v. Robinson*, 414 U.S. 218 (1973), is unavailing. In *Robinson*, the parties never

challenged the constitutionality of the arrest. *See id.* at 221–22. The challenge in *Robinson* was whether a **search** incident to a valid arrest following a traffic violation was unconstitutional.

Our research reveals that every case in Texas wherein an individual was custodially arrested after violating the seat belt law, the arrest ensued only after some additional conduct occurred or some additional factor justifying arrest was revealed. *See, e.g., Madison v. State*, 922 S.W.2d 610 (Tex. App.--Texarkana 1996, writ ref'd). In *Madison*, after stopping a driver for failure to wear a seat belt, the officer observed that the inspection sticker on the vehicle had expired more than two years earlier, and after performing a license and registration check, the officer discovered that driver had a felony record. The driver was then arrested and cocaine was discovered during an inventory search. *See also Valencia v. State*, 820 S.W.2d 397 (Tex. App.--Houston [14th Dist.] 1991, writ ref'd). In *Valencia*, officers observed a van blocking the street which drove away as they approached. The officers followed the van and observed it swerving from side to side and into the path of oncoming traffic. The officers stopped the van, noted that the driver appeared to be intoxicated and arrested the driver. The officers observed that the passenger was not wearing a seat belt, that he continually moved his hands despite admonitions to keep his hands where the officers could see them, and that the passenger had no

19

identification. The passenger was arrested and a search of the passenger revealed a large amount of cash and a number of baggies containing what appeared to be cocaine. These cases do not support the proposition that a first-time offender for a seat belt violation should be arrested, handcuffed and hauled to jail.

If we consider Atwater's evidence as true and draw all reasonable inferences in her favor, as we must do on summary judgment,[6] then she has established that Officer Turek's conduct was objectively unreasonable under the Fourth Amendment. Atwater maintains that she was placed under arrest immediately for failing to wear a seat belt. Atwater attests that Turek came at her screaming and verbally abusing her; i.e., his mind was made up before he could find out why the violation occurred. According to Atwater, Turek told her she would be taken to jail almost as soon as he got to her truck. The timing is important.

It is important also to note that in this case Atwater did not refuse to buckle her seat belt or her children's seat belts upon being stopped by Officer Turek. There was no reason to seize her because she was a serious repeat offender. According to Atwater, the previous time Officer Turek stopped her, her son was riding on the arm rest of her truck, but was wearing a seat belt. No citation was issued during this previous stop. Further, Atwater was no flight risk. Officer Turek knew she lived in the

---

[6]*See Anderson v. Liberty Lobby, Inc.*, 447 U.S. at 255 (1986).

20

neighborhood as he recognized her from the previous stop. She posed no threat to the officer or to others. The only reason to arrest Atwater instead of issuing her a citation under these circumstances was to harass and impose a level of punishment beyond the limitations of the statute. We cannot countenance such abuse from an officer of the law.

Gail Atwater became the victim of an over-zealous police officer who abused the power entrusted to him by the City of Lago Vista.[7] This case serves to remind us that "the central concern of the Fourth Amendment is to protect liberty and privacy from arbitrary and oppressive interference by government officials." *United States v. Ortiz*, 422 U.S. 891, 895 (1975) (citations omitted). It also presents fundamental questions about the

---

[7] In expressing disdain at overzealous police activity, our colleague Judge Reavley said in *Morgan v. City of Desoto*, 900 F.2d 811 (5th Cir. 1990), a case where high school students were arrested, handcuffed, and taken to jail because they were congregating on shopping center parking lots after hours, creating a litter problem:

> Regardless of the visibility of the signs, regardless of whether a class B misdemeanor (criminal trespass) was committed, regardless of whether the officers had a probable cause to arrest, and regardless of how bad a litter problem the shopping centers were having, we can find no explanation for taking every high school student found on the parking lot under any circumstances and arresting them, handcuffing them, and keeping them in jail for the night as if they were threats to society. Whatever the legal points and the liability, how can any party deny that the criminal justice system operated here as an instrument of oppression?

*Id.* at 814.

status of Fourth Amendment rights and the lines society is willing to draw concerning the conduct of police officers, the vast majority of whom dutifully carry out their obligations within constitutional limits.

It is also incumbent upon us to place this case into proper perspective. It is and should be the rare case indeed where an individual is placed under arrest for nothing more than a seat belt violation. However, this decision in no way impacts the plethora of authority justifying brief traffic stops for minor traffic violations. *See, e.g., Whren v. United States*, 517 U.S. 806 (1996). This decision is limited to its facts. Appellees argue that Officer Turek's actions were justified because he had probable cause to believe a seat belt violation occurred. While we agree that traffic violations can become a serious matter affecting public safety, we cannot agree that the seat belt violation in this case was so dangerous or so serious as to justify arrest.[8] As previously discussed, a seat belt violation affects only the passengers and operator of the vehicle in question. Although the Texas Legislature has decided, and we do not dispute, that the interest in protecting these individuals is an important one, the governmental interest in arresting an

---

[8]We do not address whether the Texas seat belt law is facially constitutional, for no such challenge was presented. This case presents an as-applied challenge. For a discussion on the need for laws mandating use of citation as opposed to arrest to enforce minor traffic laws, see Wayne R. LaFave, 3 SEARCH AND SEIZURE § 5.1(h) (3d ed. 1996).

22

individual for a seat belt violation is much less than in the case of other traffic violations which can have an immediate impact on the public at large.

Officer Turek's actions, in this case, under these facts, were constitutionally unreasonable; indeed they were indefensible. He is not, therefore, entitled to qualified immunity.

III. <u>MUNICIPALITY LIABILITY</u>

Because summary judgment for the municipality was based on failure to identify a constitutional right which had been violated by Officer Turek, that judgment also must be reversed with respect to a Fourth Amendment claim alleging unreasonable seizure.

IV. <u>LIABILITY OF CHIEF MILLER</u>

Upon review of the summary judgment record, we fail to see any evidence or argument showing that Chief Miller should be liable on any of Appellants' claims or that he would otherwise not be entitled to qualified immunity. Accordingly, the judgment of the district court dismissing claims against Chief Miller is affirmed.

V. <u>CONCLUSION</u>

The judgment of the district court with respect to the

23

Fourth Amendment unreasonable seizure claim under 42 U.S.C. § 1983 against Officer Turek and the City of Lago Vista is reversed. All claims against Officer Turek for unreasonable seizure under the Fourth Amendment are reinstated. The claim under § 1983 against the City of Lago Vista for unconstitutional activity pursuant to official policy or custom as it relates to the alleged unreasonable seizure by Officer Turek is reinstated. The judgment of the district court dismissing all claims against Chief Miller is affirmed. The judgment of the district court is otherwise affirmed.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.