**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 98-50302

_____


GAIL ATWATER, Individually; and MICHAEL HAAS, Dr, As next
friend of Anya Savannah Haas and Mackinley Xavier Haas,


Plaintiffs-Appellants,


versus


CITY OF LAGO VISTA; BART TUREK; and FRANK MILLER,
Chief Police Lago Vista,


Defendants-Appellees.



Appeal from the United States District Court
for the Western District of Texas


November 24, 1999

Before KING, Chief Judge, and REYNALDO G. GARZA, POLITZ, JOLLY, HIGGINBOTHAM,
DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS,
BENAVIDES, STEWART, PARKER and DENNIS, Circuit Judges.[*]

EMILIO M. GARZA, Circuit Judge:

---

[*]     Chief Judge King and Judges Jolly, Higginbotham, Davis, Jones, Smith, Duhé,
Barksdale, DeMoss, and Benavides concur in the majority opinion.  Judge Parker concurs in the
dissent of Judge Reynaldo G. Garza.  Judges Reynaldo G. Garza, Politz, and Parker concur in the
dissent of Judge Wiener.  Judge Stewart dissents for the reasons set forth in the panel decision.  _See_
_Atwater v. City of Lago Vista_, 165 F.3d 380 (5th Cir. 1999).  Judges Reynaldo G. Garza, Politz, and
Parker concur in the dissent of Judge Dennis.

Plaintiffs-Appellants Gail Atwater ("Atwater") and Michael Haas ("Haas"), as next friend of Anya Savannah Haas and Mackinley Xavier Haas, appealed the district court's grant of summary judgment in favor of Defendants-Appellees Officer Bart Turek ("Officer Turek"), Police Chief Frank Miller ("Chief Miller"), and the City of Lago Vista. A panel of this court reversed in part and remanded. *See Atwater v. City of Lago Vista*, 165 F.3d 380 (5th Cir. 1999), *reh'g en banc granted,* 171 F.3d 258 (5th Cir. 1999). We vacated the panel opinion, *see* 5th Cir. R. 41.3, and granted rehearing *en banc*.

I

Officer Turek arrested Gail Atwater for failing to wear her seat belt, failing to fasten her children in seat belts, driving without a license, and failing to provide proof of insurance. Officer Turek handcuffed Atwater and took her to jail, where she spent approximately one hour. Atwater appeared before a magistrate and was released after posting bond.

Atwater and her husband, Haas, subsequently brought various federal and state law claims against Officer Turek, Chief Miller, and the City of Lago Vista, arising out of Atwater's arrest.[1] Officer Turek, Chief Miller and the City of Lago Vista moved for summary judgment. The district court granted this motion.

A panel of this court reversed the district court's summary judgment with respect to Atwater's Fourth Amendment unreasonable seizure claim against Officer Turek and the City of Lago Vista and

---

[1]     Atwater and Haas alleged causes of action for: (1) Deprivation of Constitutional Rights, (2) Excessive Use of Force, (3) False Imprisonment, (4) Inadequate Training, (5) Failure to Supervise, (6) Intentional Infliction of Emotional Distress, (7) Assault and Battery, (8) Grossly Negligent Hiring and Retention, (9) Conspiracy to Formulate and Enforce a Municipal Policy to Violate Constitutional Rights, and (10) Common Fund.

concluded that Officer Turek was not entitled to qualified immunity.  *See Atwater*, 165 F.3d at 389.[2]

We granted rehearing *en banc* to reconsider the panel decision.

II

To determine the constitutionality of an arrest, "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 1699, 85 L. Ed. 2d 1, __ (1985) (quotations omitted) (alteration in original).  If an arrest is based on probable cause then "with rare exceptions . . . the result of that balancing is not in doubt." *Whren v. United States,* 517 U.S. 806, 817, 116 S. Ct. 1769, 1776, 135 L. Ed. 2d 89, __ (1996).  In other words, when probable cause exists to believe that a suspect is committing an offense, the government's interests in enforcing its laws outweigh the suspect's privacy interests, and an arrest of the suspect is reasonable.  *See, e.g., United States v. Robinson*, 414 U.S. 218, 235. 94 S. Ct. 467, 477, 38 L. Ed. 2d 427, __ (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment . . . .").

We deviate from this principle—that an arrest based on probable cause is reasonable under the Fourth Amendment—only when an arrest is "conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests."[3]  *Whren*, 517 U.S. at 818, 116 S. Ct.

_____

[2]     The panel affirmed the district court's summary judgment on all other claims.  *See Atwater*, 165 F.3d at 389.  We reinstate this part of the panel opinion.

[3]     Atwater advances an alternative argument for the first time in her *en banc* brief.  She argues that in determining whether her arrest violated the Fourth Amendment, we should follow the common law rule that existed when the Fourth Amendment was promulgated, which she claims limited the circumstances under which a misdemeanant could be arrested without a warrant.  She did not raise this argument before the district court or the panel that initially considered this case.  Instead, the panel considered this argument *sua sponte*, and even though it ruled in Atwater's favor,

-3-

at 1776, 135 L. Ed. 2d at __. For example, it is "necessary actually to perform" a balancing analysis notwithstanding the existence of probable cause when a search or seizure involves deadly force, an unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body. *See id.* (reviewing cases).

After reviewing the record, we conclude that Officer Turek had probable cause to arrest

it declined to do so based on the common law rule. *See Atwater v. City of Lago Vista*, 165 F.3d 380, 386 (5th Cir. 1999) (noting the common law rule and stating that "[a]lthough the Fourth Amendment and common law do not always coincide, the Supreme Court has recognized the logic of distinguishing between minor and serious offenses in evaluating the reasonableness of a seizure under the Fourth Amendment"). Because Atwater did not properly raise this argument previously, she has waived her right to pursue this issue here. *See Craddock Int'l Inc. v. W.K.P. Wilson & Son, Inc.*, 116 F.3d 1095, 1105 (5th Cir. 1997) ("To prevail on an issue raised for the first time on appeal, an appellant must show a plain (clear or obvious) error that affects substantial rights."); *cf. Arenson v. Southern Univ. Law Ctr.*, 53 F.3d 80, 81 (5th Cir. 1995) (per curiam) ("Appellant's request [in his petition for rehearing] for Title VII relief is denied because Arenson waived his Title VII claim by failing to seek a ruling on that issue from the *Arenson I* panel.").

Moreover, Atwater is unable to cite any cases where courts have invoked the common law rule to invalidate warrantless misdemeanor arrests otherwise supported by probable cause. Indeed, the cases uniformly uphold warrantless misdemeanor arrests where probable cause exists, even where variants of the common law standards to which Atwater refers are incorporated into state law and raised before the court. *See Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3, 6 (1st Cir. 1997) ("To date, neither the Supreme Court nor this circuit ever has held that the Fourth Amendment prohibits warrantless arrests for misdemeanors not committed in the presence of arresting officers."); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (rejecting a Fourth Amendment challenge to a misdemeanor arrest when probable cause existed, even though the arrest may have violated the plaintiff's state right "as an alleged misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer"); *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991) (upholding a misdemeanor arrest supported by probable cause and stating that "[t]he United States Constitution does not require a warrant for misdemeanors not occurring in the presence of the arresting officer"); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990) ("The requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment."); *Street v. Surdyka*, 492 F.2d 368, 371-72 (4th Cir. 1974) ("We do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence."); *cf. Whren*, 517 U.S. at 819, 116 S. Ct. at 1777, 135 L. Ed. 2d at __ ("Here the District Court found that the officers had probable cause to believe that petitioners had violated the traffic code. That rendered the stop reasonable under the Fourth Amendment . . . .").

Atwater and that he did not conduct the arrest in such an "extraordinary manner." Neither party disputes that Officer Turek had probable cause to arrest Atwater. Atwater admits that she was not wearing her seat belt and that she had not belted in her children. Operating a motor vehicle without wearing a seat belt violates Texas law,[4] and Officer Turek had discretion to arrest Atwater without a warrant, *see* Tex. Transp. Code § 543.001; *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir.1995) ("Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."). Moreover, there is no evidence in the record that Officer Turek conducted the arrest in an "extraordinary manner, unusually harmful" to Atwater's privacy interests. *Whren*, 517 at 818, 116 S. Ct. at 1776, 135 L. Ed. 2d at __. The only physical contact between Officer Turek and Atwater occurred when he placed her in handcuffs. Atwater admits that she did not suffer any physical harm during or as a result of the arrest. We therefore conclude that, because it was based on probable cause and because it was not conducted in the above-described "extraordinary manner," Officer Turek's arrest of Atwater was reasonable under the Fourth Amendment.[5] *See id.*

---

[4] Section 545.413 of the Texas Transportation Code provides:
(a) A person commits an offense if the person:
 (1) is at least 15 years of age;
 (2) is riding in the front seat of a passenger car while the vehicle is being operated;
 (3) is occupying a seat that is equipped with a safety belt; and
 (4) is not secured by a safety belt.
TEX. TRANS. CODE ANN. § 545.413

[5] Having concluded that Officer Turek's arrest of Atwater did not violate the Fourth Amendment, we need not address whether Officer Turek is entitled to qualified immunity. *See, e.g.*, *Channer v. Hall*, 112 F.3d 214, 219 n.8 (5th Cir. 1997) ("Because we hold that Channer's Thirteenth Amendment rights were not violated, we do not reach the issue of qualified immunity."). Nor do we discuss the liability of the City of Lago Vista. *See Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*,

III

Accordingly, we AFFIRM the district court's summary judgment.

_____

153 F.3d 211, 216 (5th Cir. 1998) ("Thus, § 1983 municipal liability may be imposed when (1) the enforcement of a municipal policy or custom was (2) 'the moving force' of the violation of federally protected rights.") (quotations omitted).

REYNALDO G. GARZA, Circuit Judge, dissenting:

I believe that the original opinion of the panel that I was on, which can be found at 165 F.3d, 380 (5th Cir. 1999), is sufficient to show that the seizure and handcuffing of Mrs. Atwater in this case was unreasonable and uncalled for.

I write separately in dissent because I believe that our colleagues in the majority are wrong in not dividing an arrest or a stop and a seizure of the person arrested or stopped.

We have of necessity to keep in mind that this was a traffic stop or arrest of Mrs. Atwater for failure to have her seatbelt or her children's seatbelts on when stopped. As pointed out by my colleague, Judge Parker, and author of the original opinion, Mrs. Atwater's seatbelt offense was a misdemeanor for which she could be fined up to $50 and no more. Her offense would in no way have been a danger to any one else, but herself and her children.

I have been a Texas lawyer for over sixty years and an Article III Federal Judge in Texas for over thirty-eight years. I think that I can take judicial notice of the fact that in a regular traffic stop; when a person runs a red light, makes a wrong turn, is speeding, or in this case is not wearing a seatbelt, the usual procedure for the officer making the stop or the arrest is to give the accused a citation, which shows the charge against the person driving the car, a notice to

-7-

appear before a municipal judge on a certain day at a certain time and signed by the accusing officer; which also adds a paragraph that is signed by the accused that they agree to appear on the date and time stated and that is the end of the story.

There are times when during a traffic stop an officer finds that the driver for instance, is driving while under the influence of either alcohol or drugs; the officer sees a gun on the seat of the car; the car smells of marihuana; the officer sees packages of cocaine or some other reason, like a check of the license number of the person stopped shows that the person is a fugitive or has another charge pending; in which case the officer that made the stop seizes the person and takes him or her to the police station to await being taken before a Magistrate, where the officer makes the complaint against the person and the Magistrate then sets a bond or refuses to allow one, whichever he chooses.

There is no evidence in our case that there was any reason for Mrs. Atwater to be seized and taken to the police station where she waited for an hour for a Magistrate to release her.

The majority setting aside the panel opinion makes no mention of an affidavit that is in the Record Excerpts of appellants, Gail Atwater and her husband, on behalf of two of their children. The affidavit is that of Keith A. Campbell, who was a member of the Recruitment Unit of the Austin Police Department from August 1994 to March 1997. In the affidavit he makes mention of all the things he did when screening applicants for positions in the Austin

Police Department. Mr. Campbell states he has reviewed the personnel file of Michael Barton Turek and he can state without reservation that he would not have recommended this individual to be hired by the Austin Police Department for the following reasons:

1. Lack of maturity based on his own explanations of changes in employment in the "reasons for leaving" sub-sections of each employer's identification.

2. Failed two of three reported psychological tests at A.P.D.

3. Failed to provide complete information.

Mr. Campbell's affidavit is an eye-opener of the kind of person Officer Turek, who saw fit to handcuff Mrs. Atwater behind her back for not wearing her seatbelt, is. Mrs. Atwater and her husband have sued the City of Lago Vista for its unreasonable hiring and lack of training of Turek.

Under Texas law, the City of Lago Vista is not responsible for the actions of their police officers unless they violate somebody's Constitutional Rights. Our colleagues in the majority seem to think that if an officer has probable cause to make a stop and an arrest it immunizes them to where they can do whatever they please. This approach is wrong because in my view, probable cause will never immunize a constitutional violation.

Officer Turek had probable cause to stop the car that was being driven by Mrs. Atwater for failure to have her seatbelt on, but he should have given her a citation to appear instead of seizing her, putting handcuffs behind her back, and taking her to the police station. He would have taken her children with her except that a neighbor that came on the scene took the children to her home.

I strongly believe that my duty under the oath that I have taken, once as a United States District Judge, then as an Appellate Judge, is to uphold the Constitution and Laws of the United States. Under Article IV of the Amendments to the Constitution, the seizure is different then the stop and the arrest of Mrs. Atwater was unreasonable and therefore a violation of the Constitution of the United States. I cannot see why some of my colleagues are unwilling to say that the seizure by Officer Turek was unreasonable.

WIENER, Circuit Judge, dissenting:

Today a majority of this court announces that any full custodial arrest, replete with transportation to jail and booking, is *per se* a reasonable seizure within the meaning of the Fourth Amendment as long as the arresting officer has

probable cause to believe that the individual being arrested has violated the law —— any law, even an innocuous traffic ordinance. Not only does this holding ignore the Supreme Court's longstanding pronouncements that every Fourth Amendment analysis must turn on a tripartite balancing of individual interests, government interests, and the degree of certainty that the government interest will be furthered by the search or seizure at issue, but it also turns a blind eye on the extreme facts of this case; facts that so clearly demonstrate an unreasonable seizure that those of my colleagues who concur in the majority opinion should have been tipped off that something must be critically awry with its reasoning. The result reached is so counterintuitive that it cries out for a deeper look. As the Fourth Amendment requires that every seizure must be effected pursuant to a legitimate governmental interest, and as the only conceivable reason for the full custodial arrest at issue here was Officer Turek's illegitimate desire to punish Atwater, I respectfully dissent.

I

When, as here, the facts virtually speak for themselves, it is disappointing —— even if not surprising —— that the

majority opinion goes out of its way to sanitize them. The instant facts reveal that this case is not truly about a traffic stop followed by an arrest; it is about a police officer going to extreme lengths to satisfy a personal crusade or possibly even a vendetta. The evidence would allow a jury reasonably to infer that Officer Turek had been eagerly awaiting the opportunity to threaten, frighten, and humiliate Gail Atwater: Approximately two months prior to the incident in question, Officer Turek had pulled Atwater over for a putative seatbelt violation; however, much to his dismay, he had been forced to let her drive off without his issuing her a citation when he discovered that she and the other occupants of her car had their seatbelts securely fastened.

Officer Turek's frustration over this prior incident was made readily apparent from the very beginning of the traffic stop and arrest that are now under review. When Atwater was pulled over this time, she was driving her two children, ages six and four, home from soccer practice. She was traveling in a residential neighborhood, on bone-dry streets, in broad daylight, and at a reasonable, lawful rate of speed. When Officer Turek observed that neither Atwater nor her children were wearing seatbelts, he proceeded to pull her car over.

-12-

According to the testimony, Officer Turek approached Atwater's car and yelled at her in a belligerent and threatening manner, pointing his finger menacingly in Atwater's face and terrifying her and her young children. Officer Turek screamed that they had "had this conversation before" and that this time she (Atwater) was going to jail.

Officer Turek then ordered Atwater to produce her driver's license and proof of insurance. Atwater informed him that both documents had been in her purse when it was stolen two days earlier. She did, though, provided him with her license number and address from her checkbook. Despite the fact that Officer Turek had seen Atwater's driver's license and proof of insurance when he had pulled her over only weeks earlier, he proceeded to make good on his promise to take her to jail. First, he had her step out of her car; next, he handcuffed her behind her back; then he loaded her into the back of his squad car and took her to the police station; and there she was forced to remove her shoes and glasses, empty her pockets, and allow her "mug shot" to be taken. Finally, Atwater was placed in a jail cell and made to wait for approximately one hour before being produced before a magistrate.

II

The law is long and well established that, under the Fourth Amendment, the scope of a search or seizure "must be strictly tied to and justified by the circumstances which rendered its initiation permissible." Terry v. Ohio, 392 U.S. 1, 19 (1968) (citation omitted). Implicit in this simple but forceful statement of the law ⸺ and explicit in its application by the Supreme Court to a broad panoply of cases ⸺ is the precept that the permissibility of any search or seizure depends on a balancing of (1) the government's purported interest in effecting the search or seizure, (2) discounted by the degree of certainty that the search or seizure will in fact further the government's interest, against (3) the extent of any infringement on the targeted individual's constitutionally protected privacy and liberty interests.[6]

---

[6] Thus, the Supreme Court has held that the government's interest in protecting police officers is sufficient to justify a limited "stop and frisk" of an individual when supported by reasonable suspicion that the individual is carrying a weapon. Terry, 392 U.S. at 27. But the same governmental interest is insufficient to justify the "wholly different kind of intrusion" involved in an arrest absent a greater degree of certainty ⸺ namely, probable cause ⸺ that the seizure will vindicate the governmental interest in question. Id at 26.

Similarly, although reasonable suspicion is sufficient to justify a "stop and frisk" for the purpose of protecting the police, the same quantum of certainty is insufficient to justify a "stop and frisk" for the less important and more generalized governmental interest in investigating and preventing crime. Id at 22-23, 26-27 (holding that a generalized interest in crime

-14-

The problem I perceive with the majority opinion is that its analysis focuses solely on the quantum of certainty involved in the case, to the exclusion of the other two relevant variables: the importance of the government's interest and the extent of the intrusion on the individual's liberty and privacy interests. This is all the more regrettable in light of the fact that quantum of certainty is not even at issue here: Atwater concedes that Officer Turek had probable cause to believe that she had broken the law by failing to wear a seatbelt. Indeed, Atwater further acknowledges that the government's interest in enforcing the traffic laws was sufficient to justify Officer Turek's decision, based on probable cause, to effect a traffic stop, and that the same interest would have justified his issuing her a citation. What Atwater vehemently denies, though, is that the government had

---

prevention justifies "approach[ing] a person for purposes of investigating possibly criminal behavior," but that it is "the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon" that supplies the justification for the intrusion involved in a stop and frisk). The Supreme Court applied the same framework in Tennessee v. Garner, 471 U.S. 1 (1985), when it held that the government's interest in enforcing the criminal laws is sufficient to justify an arrest that is supported by probable cause to believe that a suspect has committed a burglary, but that the government cannot employ the more extreme form of seizure involved in the use of deadly force absent the more important governmental interest of protecting the public from the threat of serious bodily harm.

any legitimate interest whatsoever —— whether on the basis of reasonable suspicion, probable cause, or even absolute certainty —— in effecting her full custodial arrest and transporting her to jail when the issuing of a citation would have fully protected and vindicated all of the government's interests.

"The Fourth Amendment proceeds as much by limitations upon the scope of governmental action as by imposing preconditions upon its initiation." Id. at 28-29; see also United States v. Place, 462 U.S. 696, 707-08 (1983). The mere fact that Officer Turek was justified in pulling Atwater over, and would have been justified in issuing her a citation, does not necessarily mean that he was justified in taking the far more intrusive step of effecting her full custodial arrest, complete with behind-the-back handcuffing, transporting to jail, and booking. "In justifying [a] particular intrusion [a] police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. In other words, to justify each successive, increasingly stringent intrusion on an individual's liberty and privacy interests, a police officer must at a minimum be able to articulate *some*

-16-

reason why it was necessary to effect the further intrusion. The articulated reason does not need to be independent of the reasons that justify the initial intrusions: "The test is whether those interests are sufficiently substantial, not whether they are independent of the interest in investigating crimes effectively and apprehending suspects." Place, 462 U.S. at 704. But if the identified reasons for both the initial and the successive intrusions are the same, a police officer must be able to advance a plausible claim that the initial intrusions were inadequate fully to serve the proffered governmental interests.[7] If the officer cannot plausibly make that claim —— in other words, if there were *no legitimate reasons* for the further intrusions —— then the heightened intrusions are by definition "unreasonable."

I agree with the majority that the courts should avoid getting into the business of micro-managing arrests. I do not agree, however, that a jurisprudence that is faithful to the fundamental principles of the Fourth Amendment —— and that thus

---

[7] This is an objective standard rather than a subjective one. See Whren v. United States, 517 U.S. 806, 814 (1996) ("[T]he Fourth Amendment's concern with ʻreasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent."). Thus, the question is not whether the police officer had a plausible reason in mind at the time of the arrest, but rather whether the facts, viewed objectively and from a distance, admit of a plausible reason justifying the arrest.

would find a Fourth Amendment violation in the instant case —— requires the courts to engage in such a practice. In the overwhelming majority of cases, when a police officer has probable cause to believe that an individual has violated or is violating the law, there are good and obvious reasons for that officer to arrest the individual. Examples of reasons that justify a police officer's effecting an arrest include risk of flight, see United States v. Salerno, 481 U.S. 739, 745 (1987); need to interrogate an individual or search him for evidence, see New York v. Harris, 495 U.S. 14 (1990); and need to protect the community from any threat that an individual poses to its safety, see generally Bass v. Robinson, 167 F.3d 1041, 1045 (6th Cir. 1999); Dunn v. Denk, 79 F.3d 401, 408 (5th Cir. 1996), cert. denied, 519 U.S. 813 (1996).

Clearly, none of these or other similar reasons are applicable to Officer Turek's arrest of Atwater. She is a local resident, well-known to Officer Turek. There is no indication that she posed even a minimal flight risk. The evidence amply demonstrates that she did not pose any threat to the officer or the community. And there was no need to conduct any further investigation, as the full extent of Atwater's violation of the seatbelt law had already been

clearly ascertained. By this process of elimination, then, the one and only conclusion that can be reached on the evidence is that the sole reason Officer Turek arrested Atwater was his determination to inflict punishment on her, above and beyond the $50.00 fine prescribed by Texas law. Not only is the arresting officer's personal desire to punish a constitutionally illegitimate reason under the Fourth Amendment for effecting a seizure; it is also, at least potentially, an independent violation of the Fifth and Fourteenth Amendments, which permit the infliction of punishment only after a formal adjudication. See Bell v. Wolfish, 441 U.S. 520 (1979); Kenedy v. Mendoza-Martinez, 372 U.S. 144 (1963); Valencia v. Wiggins, 981 F.2d 1440 (5th Cir. 1993). Allowing Officer Turek to skate here gives the officer on the street carte blanche to be a one-person cop cum judge cum jury cum executioner: In effect, he can arrest, charge, try, convict, and both assess and inflict punishment.

The desire of the majority of my esteemed colleagues to arrive at a simple, bright-line rule that can be easily applied by officers in the field is both understandable and laudable.[8]

_____

[8] The majority claims that its holding is mandated by language found in Whren, 517 U.S. at 818 ("Where probable cause has existed, the only cases in which we have found it necessary actually to perform the 'balancing' analysis involved searches or seizures

But such "a rigid all-or-nothing model of justification and regulation under the Amendment" ignores the complexity of real-world events and thus fails to remain faithful to the fundamental principles underlying the Fourth Amendment. See Terry, 392 U.S. at 17. It also has the unfortunate effect of licensing the admittedly rare rogue patrol officer to inflict vigilante punishment on a citizen under the guise of an arrest —— a state of affairs that the Constitution clearly does not tolerate.

The rule that I would apply to this case has the virtue of being just as simple as the majority's, and thus just as easy for the police to apply in the myriad complex and confusing situations that they regularly encounter, without, however, jettisoning the fundamental principles embodied in the Fourth Amendment. Simply stated: Before a police officer can

conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests"). Not only is this language dicta, however —— the Whren court was assessing the validity of a traffic stop, not a full custodial arrest —— but it arguably supports my position rather than the majority's. "Extraordinary" is defined in Webster's Dictionary as "going beyond what is usual, regular, or customary." WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY 296 (1965). Of course, what qualifies as "usual, regular, or customary" is entirely dependent on the circumstances; an action that would be deemed an extraordinary response to one set of facts might be thought quite ordinary and commonplace if the facts were different. It need hardly be said that a full custodial arrest, complete with behind-the-back-handcuffing, transporting to jail, and booking, is an extraordinary response to a local mother's daytime seatbelt violation.

constitutionally place an individual under full custodial arrest, even with probable cause, the officer must have a plausible, articulable reason for effecting such an intrusion — a reason other than a desire on the part of the officer to punish the individual for his or her conduct.[9]  This is hardly a burdensome imposition on the police; I cannot see any reason for the police to complain about having to articulate some manner of justification for the significant intrusion on Fourth Amendment privacy and liberty interests inherent in effecting any full custodial arrest.

Try as I may, I can discern no legitimate justification whatsoever for Officer Turek's lamentable decision to arrest, handcuff, transport, book, and jail Atwater; conversely, I see every indication that Officer Turek's sole purpose in doing so was unilaterally to inflict an illegitimate — and unconstitutional — punishment on her.  For these reasons, I must respectfully dissent.

---

[9] This is an objective standard, rather than a subjective one. See supra note 2.

DENNIS, Circuit Judge, dissenting:

I respectfully dissent.

The majority opinion does not address an important constitutional issue raised by this case, discussed extensively at oral argument, and fully considered by the en banc court: whether the Fourth Amendment, by incorporating the common law at the time it was framed, prohibits, as an unreasonable seizure, the warrant less full custodial arrest of an individual for a fine-only criminal misdemeanor that does not constitute or involve a breach of the peace.

The Supreme Court granted *certiorari* in order to consider this very issue in *Ricci v. Arlington Heights,* 116 F.3d 288 (7th Cir. 1997), *cert. granted,* 118 S.Ct. 679, 139 L.Ed.2d 627, *and cert. dismissed*, 523 U.S. 613, 118 S.Ct. 1693, 140 L.Ed.2d 789 (1998). However, after oral argument the writ of *certiorari* was dismissed as improvidently granted. *See Ricci v. Village of Arlington Heights*, 523 U.S. 613, 118 S.Ct. 1693, 140 L.Ed.2d 789 (1998). The Supreme Court oral argument transcripts in *Ricci* suggest that the Court dismissed *certiorari* as improvidently granted only because the Court learned for the first time at oral argument that the issue was not actually presented because Ricci's arrest had been based on the violation of a civil business license ordinance rather than a criminal misdemeanor offense. Oral Argument Before the Supreme Court of the United States (1998 WL 204590) at 57-64, *Ricci v. Arlington Heights,* 116 F.3d 288 (7th Cir. 1997), *cert. granted,* 118 S.Ct. 679, 139 L.Ed.2d 627, *and cert. dismissed*, 523 U.S. 613, 118 S.Ct. 1693, 140 L.Ed.2d 789 (1998) (No. 97-501).

The district court's granting of the defendants' Rule 12(b)(6) and Rule 56 motions is reviewed *de novo* by this court of appeals. *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558 (5th Cir. 1995)(failure to state a claim); *Montgomery v. Brookshire*, 34 F.3d 291, 294 (5th Cir.

1994)(summary judgment). In accordance with FED. R. APP. P. 3 and 28, the appellant adequately noticed and argued to this court the issue of whether the warrantless full custodial arrest of a person for violation of a fine-only criminal misdemeanor seat-belt law, involving no breach of the peace, violates that person's Fourth Amendment rights.

The foregoing question of law is the only issue presented by this appeal. The district court concluded that the plaintiffs "have not provided evidence of any violation of a constitutional right, much less a violation of a clearly established constitutional right." The district court based its ruling primarily on the specific finding that the "only alleged 'force' and 'imprisonment' arose out [of] Turek's arrest of Atwater for the seat belt violations as clearly authorized by Texas law."

For purposes of the motion for summary judgment, the district court found that Turek, immediately upon stopping Atwater, yelled at her, "We've met before!" and "You're going to jail!" Based upon these findings and the evidence, it reasonably can be inferred that Turek initially placed Atwater in full custodial arrest based only on the seat belt violations and called for a back up to assist him in his seizure of Atwater, her children, and her vehicle. Consequently, this appeal does not raise the question of whether Turek constitutionally could have made a full custody arrest of Atwater for the additional charges he sometime later filed against her of failure to provide proof of insurance and failure to have her driver's license in her possession. Moreover, the failure to provide evidence of insurance or financial responsibility in itself is not a crime or offense under Texas law. *See* TEX. TRANSP. CODE § 601.053 (West 1999); Op. Tex. Atty. Gen. 1983, No. MW-577. The failure to carry or exhibit a driver's license is a fine-only, non-peace breaching misdemeanor, if, as in this case, it is not a third or subsequent conviction within one year after the date of the second such conviction. *See* TEX. TRANSP. CODE § 521.025. Finally, because Turek recently before had stopped Atwater and had

-23-

examined her driver's license and evidence of insurance, there is a genuine factual dispute, not amenable to summary judgment, as to whether Turek had probable cause to file the additional charges against Atwater, which were summarily dismissed the same day by the magistrate.

I cannot join the majority opinion because it does not acknowledge or address the arguments in favor of the proposition that an unnecessary full custodial arrest of a person for a fine- only criminal misdemeanor involving no breach of the peace is an unreasonable seizure against which the people have been guaranteed a right to be secure in their persons by the Fourth Amendment. Those arguments were set forth fully and very persuasively by the briefs of the petitioner and his amici in *Ricci. See, e.g.,* Petitioner's Brief (1998 WL 74152), Reply Brief of Petitioner (1998 WL 167353), Brief of the American Civil Liberties Union and the ACLU of Illinois in Support of Petitioner (1998 WL 77846), Brief of the National Association of Criminal Defense Lawyers as Amicus Curiae in Support of Petitioner (1998 WL 77850), Brief of the Institute for Justice as Amicus Curiae in Support of Petitioner (1998 WL 77847), *Ricci v. Arlington Heights,* 116 F.3d 288 (7th Cir. 1997), *cert. granted,* 118 S.Ct. 679, 139 L.Ed.2d 627, *and cert. dismissed*, 523 U.S. 613, 118 S.Ct. 1693, 140 L.Ed.2d 789 (1998) (No. 97-501). In summary, I read the arguments to be as follows: The Fourth Amendment provides that "[t]he right of the people to be secure in their persons... against unreasonable... seizures, shall not be violated[.]" When determining whether a particular governmental action violates the Fourth Amendment, the Supreme Court has said that the first inquiry is whether the action was regarded as an unlawful search or seizure under the common law when the amendment was framed. *See Wyoming v. Houghton,* -- U.S. --, 119 S.Ct. 1297, 1300, 143 L.Ed.2d 408 (1999) (citing *Wilson v. Arkansas,* 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995); *California v. Hodari D.,* 499 U.S. 621, 624, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). "Where that

inquiry yields no answer, we must evaluate the search or seizure under traditional standards of reasonableness by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate interests." *Houghton*, 119 S.Ct. at 1300 (citing, *e.g.*, *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652-53, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)).

The common law prohibited the warrantless arrest of an individual for a misdemeanor unless it involved a breach of the peace. As the Supreme Court in *Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 69 L.Ed. 543 (1925) stated:

> 'In cases of misdemeanor, a peace officer like a private person has at common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence.' Halsbury's Laws of England, vol. 9, part. III, 612.
> The reason for arrest for misdemeanors without warrant at common law was promptly to suppress breaches of the peace (1 Stephen, History of Criminal Law, 193), while the reason for arrest without warrant on a reliable report of a felony was because the public safety and the due apprehension of criminals charged with heinous offenses required that such arrests should be made at once without warrant (Rohan v. Sawin, 5 Cush. [Mass.] 281).

While the term "peace of the king" at common law meant, in one sense, the "law and sovereignty" of the king in general, with regard to a peace officer's power of arrest the term denoted "some violent or disorderly act causing public alarm or disturbance...." 2 ENCYCLOPEDIA OF THE LAWS OF ENGLAND 436-37 (E.A. Jelf ed., 3d ed. 1938). The misdemeanors for which common law allowed custodial arrest were serious offenses, including assaults and other dangerous and disruptive acts, or public disturbances. *See* Horace L. Wilgus, *Arrest Without a Warrant*, 22 MICH. L. REV. 541, 572-77 (1923-24).

Applied to the case at hand, it seems evident that the failure to buckle a seat-belt hardly

conjures up images of the "violent or disorderly acts" contemplated by the common law as warranting a full custodial arrest.  *See* SIR WILLIAM BLACKSTONE, BLACKSTONE'S COMMENTARIES ON THE LAW 811 (Bernard C. Gavit ed. 1892) (listing offenses against the public peace as riotous assemblages, unlawful hunting, threatening letters, destruction of locks or flood-gates, and affrays).  Gail Atwater's infraction of the Texas fine-only criminal misdemeanor seat-belt law did not constitute or portend any disturbance that would even approach a breach of the peace under the common law when the Fourth Amendment was framed.  Therefore, the initial inquiry required by the Supreme Court's decisions yields the answer that Turek's full custodial arrest of Atwater for that infraction violated her right under the Fourth Amendment to be secure in her person against unreasonable seizures.

Even if the historical evidence were thought to be equivocal, *see Houghton*, 119 S.Ct. at 1302, the panel opinion in this case demonstrates that the balancing of the relative interests weighs decidedly in favor of protecting the personal privacy and personal dignity of an individual from an intrusion that must surely be an annoying, frightening, and  humiliating experience.  *See Atwater v. City of Lago Vista*, 165 F.3d 380 (5ᵗʰ Cir. 1999).  In this case in which there is substantial and perhaps conclusive evidence that the governmental action would have been regarded as an unlawful search or seizure under the common law when the amendment was framed, the panel opinion also is very persuasive in its evaluation of the seizure under the traditional standards of reasonableness and its conclusion that the degree to which the seizure intrudes upon an individual's privacy and dignity undoubtedly outweighs the degree to which it is needed for the promotion of legitimate governmental interests.  *Id.*

The majority opinion affirms the district court's summary judgment without undertaking the first or the second inquiry demanded of us by the Fourth Amendment and the Supreme Court's

decisions in *Wyoming v. Houghton,* -- U.S. –, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) and *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).  The Supreme Court's reaffirmation of our duty to make these inquiries subsequent to its decision in *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and the Supreme Court's recent willingness to examine the issue of warrantless custodial arrests for peace-breachless fine-only misdemeanors in *Ricci v. Arlington Heights,* 116 F.3d 288 (7th Cir. 1997), *cert. granted,* 118 S.Ct. 679, 139 L.Ed.2d 627, *and cert. dismissed*, 523 U.S. 613, 118 S.Ct. 1693, 140 L.Ed.2d 789 (1998), convinces me that the majority is mistaken in assuming that our obligation to carefully scrutinize intrusions upon the right of the people to be secure in their persons has been totally displaced by a simple *Whren* probable cause matrix.  Accordingly, because the majority used an inappropriate truncated analysis to reach what appears to be an incorrect result, I respectfully dissent.