IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-10640
_____


JESSE GOMEZ; STELLA GOMEZ

             Plaintiffs - Appellants

   v.

CITY OF PLAINVIEW; ET AL

             Defendants

CITY OF PLAINVIEW; HALE COUNTY TX; LLOYD WOODS, Individually and
as Mayor of the City of Plainview; DWAYNE DODSON, Individually
and as City Councilman of the City of Plainview; ROY OSBORN,
Individually and as chief of police of the City of Plainview;
WILLIAM MULL, Individually and as chief of police of the City of
Plainview; MICHAEL CARROL, Individually and as officer for the
City of Plainview Police Department; ROLAND ASEBEDO, Individually
and as officer for the City of Plainview Police Department; EDDIE
GARZA, Individually and as officer for the City of Plainview
Police Department; MANUEL BALDERAS, Individually and as officer
for the City of Plainview Police Department; RALPH MAY,
Individually and as officer for the City of Plainview Police
Department; JESSE BARRERA, Individually and as officer for the
City of Plainview Police Department; JAIME SALINAS, Individually
and as officer for the City of Plainview Police Department; JIM
FOSTER, Individually and as officer for the City of Plainview
Police Department; BOBBY CHANDLER, Individually and as officer
for the City of Plainview Police Department; FRED BRADLEY,
Individually and as officer for the City of Plainview Police
Department; RUBEN LIZCANO, Individually and as officer for the
Hale County Sheriff's Department; LARRY MONKRIES, Individually
and as officer for the Hale County Sheriff's Department

             Defendants - Appellees

_____

Appeal from the United States District Court
for the Northern District of Texas

(5:98-CV-200-C)
....................................................
August 15, 2000

Before KING, Chief Judge, and GARWOOD and DeMOSS, Circuit Judges.

KING, Chief Judge:[*]

Plaintiffs-Appellants appeal from an order of the district court granting summary judgment in favor of Defendants-Appellees. We affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Jesse Gomez, Sr., and his wife, Stella Gomez ("Appellants" and, together with their relatives, the "Gomez Family"), brought this 42 U.S.C. § 1983 action against the City of Plainview, Texas, its mayor, city manager, one of its council members, and numerous officers for its police department (the "City Appellees"), and Hale County and several of its deputy sheriffs (the "County Appellees").[1]  Appellants are long-term residents of Plainview, which is located in Hale County.  Appellants have four sons: Jesse, Jr., Ricardo, Jason, and Jezbenob.  Ricardo is

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] On December 5, 1998, Appellants' claims against Roy Osborn, individually and as Chief of Police of the City of Plainview, and Eddie Garza and Jim Foster, individually and as officers for the City of Plainview Police Department, were dismissed without prejudice for failure to serve the summons and complaint.

married to Sally Gomez, and they have two children of their own. Stella Gomez's sister, Maria Teresa "Terry" Diaz, also plays a part in this controversy.

A group of Plainview citizens formed a group known as Turn Around Plainview ("TAP").[2] The principal purpose of forming TAP, it appears, was to reduce the level of illegal drug activity in the Plainview area. As a means to that end, members of TAP conduct so-called marches outside residences in which they suspect that illegal drug-related activities occur or in which they suspect drug offenders reside. TAP members arrive on a chartered bus, often on a Friday evening, and conduct these so-called marches, which can probably best be described as protests or targeted picketing, until late that same night or early the following morning. The marches are held on public streets and consist primarily of chanting and name-calling.[3]

TAP targeted the Gomez Family in their quest to turn the city around, apparently because certain members of the family have a history of involvement in drug-related activities. In 1995, Ricardo Gomez was arrested for, inter alia, possession of drug paraphernalia, and Jason Gomez was arrested for possession

---

[2] This case was decided on summary judgment; therefore, the actions that Appellants claim gives rise to their § 1983 action will be described in the light most favorable to them, as the nonmoving party. See Johnson v. Merrell Dow Pharmaceuticals, Inc., 965 F.2d 31, 32 (5th Cir. 1992).

[3] Appellants do not allege that any state laws or local ordinances are violated during these marches.

of marijuana. Later that same year, Jason pleaded guilty to delivery of cocaine. The City Appellees also contend that Terry Diaz was, prior to the incidents giving rise to this law suit, convicted of possession of cocaine and arrested for possession of marijuana.[4] TAP conducted several marches outside of Appellants' home, in which they resided with their son, Jezbenob. Of particular relevance here is the march that began during the evening hours of August 16, 1996, and lasted until the early morning hours of the following day. On that particular occasion, all members of the Gomez Family were present.

According to Appellants, in the early evening hours of August 16, Defendants-Appellees Mull, Carrol, Lizcano, and other law enforcement personnel arrived at Appellants' home and notified them that a TAP march was soon to occur there. Carrol stated to Jason and Ricardo Gomez that he would arrest the family that night because they were drug dealers. During this encounter, several officers, including Lizcano, pointed guns or rifles at Ricardo and Sally Gomez and their two children. Mull allegedly told Jason Gomez something to the effect of, "I've got you." Lizcano allegedly said to Jason, "Shut up. You know you're going down."

---

[4] In 1997, after the events at issue in this case occurred, Jesse Gomez, Jr. pleaded guilty to possession of marijuana. In 1998, Jesse, Jr. was indicted for delivery of cocaine.

4

TAP members arrived shortly thereafter and began targeted picketing in front of Appellants' home. According to the sworn depositions of Appellants, no fewer than twelve officers participated in the targeted picketing that occurred that night. This participation included chanting with the protestors that the Gomez Family was "mighty dumb," that they were "drug users" and "child abusers" and that they "had to go." It also included laughing at the Gomez Family and prompting protestors to yell louder. Jesse, Sr. alleges that Carrol made obscene gestures directed towards him. Members of the Gomez Family also aver in affidavits that they were told by Plainview police officers that they could not leave the house. These affidavits do not name any specific officers accused of making such statements. Several of the affidavits complain that Dodson and others spit at members of the Gomez Family and that Mull refused to stop the picketing when asked.

According to the police officers involved, they were at Appellants' residence to provide police protection, security, and crowd control. The Hale County deputy sheriffs were there at the request of the Plainview City Police Department. The Gomez Family was in front of Appellants' house during the picketing and, according to Lizcano, they were yelling obscenities at the crowd. Jesse Gomez, Sr. was grabbing his groin and making obscene gestures, and another member of the Gomez Family was making obscene gestures while sitting atop a commode in

5

Appellants' front yard.  At some point, a member of the Gomez Family was arrested for having made these obscene gestures. Jesse, Sr. claims that Dodson called him a son-of-a-bitch, at which point Jason Gomez spit in Dodson's face and was arrested. In the view of law enforcement personnel, Jesse, Sr. interfered with this arrest and was likewise arrested.  In all, Jason Gomez, Jesse Gomez, Jr., Ricardo Gomez, Terry Diaz, and Jesse Gomez, Sr. were arrested that night.  There is no indication in the record that any member of TAP was arrested.

Appellants filed suit under § 1983, seeking injunctive relief and actual and punitive damages.  They alleged that the actions of the City and County Appellees violated their clearly established constitutional rights.  They asserted that:

> [Appellants], while secluded in the privacy of their home, have a constitutional right to be free from unwarranted governmental intrusion which right was violated by the [Appellees] by their conduct of participating in, encouraging, and enabling marches and demonstration targeted specifically at [Appellants] at [their] private residence.

> The rights of privacy and association possessed by [Appellants] while in the security and seclusion of their private residence are rights which are secured to [Appellants] by the Constitution of the United States and such rights outweigh any First Amendment rights of [Appellees] to target and demonstrate against [Appellants] at [their] home.

In October 1998, City Appellees filed a motion to dismiss or, in the alternative, for summary judgment and County Appellees filed a motion for summary judgment.  Both motions raised the affirmative defense of qualified immunity.  In separate orders,

the district court granted summary judgment in favor of all Appellees, and Appellants timely appeal.


## II.  STANDARD OF REVIEW

We review the granting of summary judgment de novo, applying the same criteria used by the district court in the first instance.  See Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994); Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party."  Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir.1994) (internal citations omitted).  We must view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## III. DISCUSSION

Appellants assert a cause of action under 42 U.S.C. § 1983.[5] "To prevail on § 1983 claim against a state official performing a discretionary function, and to overcome the qualified immunity defense, a plaintiff must show that the officer violated 'clearly established . . . constitutional rights of which a reasonable person would have known.'" Saenz v. Heldenfels Brothers, Inc., 183 F.3d 389, 391 (5th Cir. 1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (omission in original). Local governing bodies are liable under § 1983 where the plaintiff "prove[s] that his constitutional rights were violated as a result of a custom or policy of the [local governing body]." Gabriel v. City of Plano, 202 F.3d 741, 745 (5th Cir. 2000). In either case, we must first inquire whether the deprivation of a constitutional right has been alleged. See Saenz, 183 F.3d at 391. If we conclude that the complained of conduct does not violate a constitutional right, we need not decide whether the state actors are entitled to qualified immunity. See Atwater v.

---

[5] The statute provides, in pertinent part, that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

8

<u>City of Lago Vista</u>, 195 F.3d 242, 246 n.5 (5th Cir. 1999) (en banc).  Appellants allege that the complained of conduct in this case violated their right to privacy grounded in the First, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution, and their right to freedom of association grounded in the First Amendment of the United States Constitution.[6]  We address each alleged violation in turn.

## A.  Right to privacy

Appellants argue that the Supreme Court has recognized a constitutional right to privacy and that this right precludes the government from interfering in certain ways with one's desire and attempt to be let alone to enjoy the company of his family in the sanctity of his home.  They argue that the alleged actions of the state actors in this case constituted just the sort of interference from which they have a constitutional right to be free.  They state that the "City and County Appellees organized,

---

[6] Appellants also claim in their brief before us that the alleged actions of Appellees "caused [them] to suffer [a] deprivation[] of . . . their right to enjoy life and liberty and the right to use and enjoy their property."  Appellants' Brief at 14.  Appellants raised these claims in their complaint.  They failed, however, to advance them in their response to Appellees' motions for summary judgement, and the district court did not address them in its orders.  Appellants fail to develop any argument before us that the district court erred in this regard, and we therefore consider the argument and the underlying claims waived.  <u>See</u> <u>Rutherford v. Harris County</u>, 197 F.3d 173, 193 (5th Cir. 1999) ("[W]e will not consider an issue that is inadequately briefed . . . ."); <u>Justiss Oil Co., Inc. v. Kerr-McGee Refining Corp.</u>, 75 F.3d 1057, 1067 (5th Cir. 1996) (same).

participated in, and encouraged demonstrations targeted directly at the Gomezes while the Gomezes attempted to enjoy the privacy of their home.  By demonstrating against the Gomezes in this manner, City and County Appellees clearly violated the Gomezes' right to be free of unwarranted governmental intrusions." Appellants' Brief at 21.  Appellants rely on a number of cases that support, but do not compel, recognition of the constitutional protection they advance.  Ultimately, however, we need not decide whether the constitution affords individuals this sort of protection because we conclude that, even if it does, the actions asserted here and supported by adequate summary judgement evidence do not amount to a constitutional violation.

In Griswold v. Connecticut, 381 U.S. 479 (1965), the Supreme Court held that a Connecticut statute forbidding the use of contraceptives unconstitutionally violated the right of marital privacy.  In its opinion, the Court explained that "specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance.  Various guarantees create zones of privacy." Id. at 484 (citations omitted).  Appellants rely on the case for the proposition that "[a]n individual's constitutional right to privacy has long been recognized by the Supreme Court as a fundamental right of each American."  Appellants' Brief at 17. They argue that the right to privacy is particularly strong regarding matters of the family, and that "the courts have

10

continuously provided a shelter for such relationships from unjustified intrusion."  Id. at 19.

Quoting Katz v. United States, 389 U.S. 347 (1967), Appellants define the right to privacy "as, very simply, 'the right to be let alone.'" Appellants' Brief at 17 (quoting Katz, 389 U.S. at 350).  Appellants rely on Katz and Oliver v. United States, 466 U.S. 170 (1984), for the proposition that "'[c]ertain areas deserve the most scrupulous protection from government invasion.'"  Appellants' Brief at 19 (quoting Oliver, 466 U.S. at 178).  They argue that the home is just such an area.  Both Oliver and Katz, however, dealt with the Fourth Amendment issue of warrantless searches and seizures.  Aside from fleeting references to being a captive audience in their own home, Appellants do not argue that the actions alleged to have been taken by any of the Appellees amounted to an unreasonable search or seizure within the meaning of the Fourth Amendment.  As the Supreme Court explained in Katz:

> the Fourth Amendment cannot be translated into a general constitutional 'right to privacy.'  That Amendment protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all.  Other provisions of the Constitution protect personal privacy from other forms of governmental invasion.  But the protection of a person's general right to privacy--his right to be let alone by other people--is, like the protection of his property and of his very life, left largely to the law of the individual States.

389 U.S. 350-51 (emphasis in original).

11

Appellants place heavy reliance upon Frisby v. Schultz, 487 U.S. 474 (1988). In Frisby, the Town Board of Brookfield, Wisconsin, enacted an ordinance banning targeted picketing of any dwelling in the town. Those wishing to engage in targeted picketing in front of the home of a Brookfield doctor challenged the ordinance as a violation of the First Amendment. The Supreme Court began its analysis in the case by stating that "[t]he antipicketing ordinance operates at the core of the First Amendment by prohibiting appellees from engaging in picketing on an issue of public concern." Id. at 479. The Court determined that the ordinance served the significant government interest of protecting the privacy of the residents of the town, see id. at 484, that it was narrowly tailored to serve this interest, see id. at 487-88, and that it left open "ample alternative channels of communication." Id. at 484.

Appellants glean two proposition from Frisby. First, they argue that the Supreme Court in Frisby "held in favor of the sanctity of the home where to hold otherwise would create in the residents a captive audience." Appellants' Brief at 20. Second, they argue that focused picketing is not protected by the First Amendment. See id. at 23. They conclude from these propositions that in cases of targeted picketing, "the privacy interests of the residents in their home far outweigh the rights of the speaker." Id. at 24.

12

After considering Appellants' similar arguments below, the district court concluded that because Appellants' "relied-upon case law is factually distinguishable from the instant case, and Fifth Circuit precedent upholds [Appellees'] asserted free speech rights, [Appellants'] right of privacy claim is defeated . . . ." Unlike the district court, we find it unnecessary to balance Appellants' asserted privacy right against Appellees' asserted free speech right, or, for that matter, even to embrace the constitutional right asserted by Appellants. We conclude instead that the conduct alleged by Appellants and supported by summary judgment evidence would not offend the asserted constitutional right to be free from government interference in the privacy of the home.

Our thorough review of the summary judgment record in this case reveals that Appellants have presented no evidence, aside from bald assertions, to support their factual claim that any of the City or County Appellees, acting under color of state law, organized the march in question. Likewise, they have presented no evidence that the alleged conduct of the individual Appellees was engaged in pursuant to the official policy or custom of the City of Plainview or Hale County. Appellants have presented no evidence that might establish that either Appellee Mayor Lloyd Woods or Appellee City Councilman Dwayne Dodson was present at the march in his official capacity. Finally, in their affidavits appended to their response to Appellees' motions for summary

13

judgment, Appellants assert that certain City and County Appellees, who came onto Appellants' property to notify them that a march would be occurring that night, pointed rifles at them. In their prior depositions, however, Appellants stated that the rifles were only pointed at their grandchildren, who are not parties to this suit. In this circuit, "a plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation." Doe v. Dallas Indep. School Dist., 2000 WL 1014682, at *6 (5th Cir. Jul. 24, 2000). Appellants have offered no explanation for their changed account of the facts. Consequently, this case hangs on their assertions that certain of the Appellee officers sent to their home to keep the peace laughed at them, that certain of these officers joined in chants against them, that certain of these officers provided encouragement to the protesters, and that an Appellee officer blocked the street in front of their house with a fire truck. These actions simply do not offend the asserted constitutional right to be free from government interference in the privacy of the home.

## B. Freedom of Association

Appellants also argue that the alleged actions of Appellees violated their familial rights of association. As the Supreme Court explained in Board of Directors of Rotary Int'l v. Rotary

14

Club of Duarte, it "has recognized that the right to engage in activities protected by the First Amendment implies a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.  For this reason, [i]mpediments to the exercise of one's right to choose one's associates can violate the right of association protected by the First Amendment . . . ."  481 U.S. 537, 548 (1987) (internal citations and quotation marks omitted) (alteration and omission in original).  The district court held that Appellants failed to plead a cognizable claim for a violation of their freedom of association rights.  Based upon our discussion of Appellants' summary judgment evidence, we agree.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.